# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| REALTIME DATA, LLC d/b/a IXO,<br><br>    *Plaintiffs*,<br><br>v.<br><br>APPLE INC.,<br><br>    *Defendant*. | Civil Action No. 6:15-cv-885<br><br>**JURY TRIAL DEMANDED** |

## APPLE'S MOTION TO TRANSFER

Apple Inc. ("Apple") moves this Court, pursuant to 28 U.S.C. § 1404, for an order transferring this case to the U.S. District Court for the Northern District of California.

## I.   INTRODUCTION

The Northern District of California is clearly a more convenient forum for this litigation, for the same reasons the Court recently noted in transferring Realtime's cases against two other California companies—Dropbox, Inc. ("Dropbox") and Teradata Operations, Inc. ("Teradata")—to the Northern District of California. *See Realtime Data LLC v. Dropbox, Inc.*, No. 6:15-CV-465-RWS-JDL, Dkt. No. 34 (E.D. Tex. Jan. 12, 2016) (hereinafter, "*Dropbox* Transfer Order") and *Realtime Data LLC v. Teradata Corporation et al.*, No. 6:15-CV-470-RWS-JDL, Dkt. No. 35 (E.D. Tex. Jan. 20, 2016) (hereinafter, "*Teradata* Transfer Order"). This case was brought by a New York company (Realtime) against a California company (Apple) who has and always has had its headquarters in Cupertino, California. Apple developed and designed the accused technology in Cupertino, and the marketing and finance work for the accused technology was also carried out in Cupertino. All of Apple's anticipated witnesses reside in the San Francisco area, as do the vast majority of documents that Apple believes are likely to be produced.

Nor do Realtime's witnesses reside in this District. They reside in New York, including Realtime's Vice President and the named inventor of three of the four patents Realtime asserts. Realtime may argue that an office space it maintains in Tyler creates sufficient connection with the District. But, that office space is an artifact of litigation, created to store Realtime's documents and prototypes for a prior case. In any event, as recognized in *Dropbox* and *Teradata*, the bulk of the relevant evidence in patent cases comes from the defendant, and here that evidence is located in California.

In addition to the facts in favor of transfer being on all fours with those in the *Dropbox*

1

case, there is one additional fact that favors transfer in the Apple matter. When Dropbox moved to transfer, the only jurisdiction adjudicating the '530 patent (the only patent that overlaps between the *Apple* case and copending cases including the *Dropbox* and *Teradata* cases) was this District. With the transfer of the *Dropbox* and *Teradata* matters, the Northern District of California will also have experience with that patent, rending the judicial economy prong neutral as between the two districts. Furthermore, this Court has made clear that judicial economy cannot "override" the fact that the Northern District of California would clearly be a more convenient place for this case to be litigated. Accordingly, Apple respectfully requests that this Court transfer this case to the Northern District of California.

## II.     FACTUAL BACKGROUND

On October 5, 2015, Realtime filed its Complaint against Apple, alleging infringement of U.S. Patent Nos. 7,181,608, 8,090,936, 8,880,862, and 7,415,530 (the "Asserted Patents"), which purportedly relate to "[s]ystems and methods for accelerated loading of operating systems and application programs." (Dkt. 1 (Compl.) ¶¶ 10-11, 20-21, 30-31.) Realtime alleges that Apple infringes by manufacturing, using, selling, offering for sale, and/or importing "Apple's iOS and OS X operating systems" and devices running the same (the "Accused Functionalities") (*Id.* ¶¶ 12, 22, 32, 42.) Realtime defines those devices as "including, but not limited to, the iPhone, the iPad, the iPod Touch, the MacBook, the iMac, the Mac Pro, the Apple Watch, and Apple TV" (collectively, the "Accused Products"). (*Id.*)

### A.     Apple Is a California Corporation with No Material Ties to the Eastern District of Texas

Apple is a California corporation. Since its founding in 1976, Apple's headquarters and principal place of business have been in Cupertino, in the Northern District of California.

(Declaration of Michael Jaynes ("Jaynes Decl.") ¶¶ 4-5.) About 25,000 Apple employees work in or near Cupertino, including most of the employees with primary responsibility for Apple's research, development, marketing, and sales efforts. (*Id.* ¶ 5.)

Apple researched, designed, and developed the Accused Functionalities and the Accused Products in Cupertino. (*Id.* ¶ 8.) The vast majority of its technical documents and individuals with relevant knowledge relating to those products are also located in or near there. (*Id.* ¶¶ 9-10.) The same is true for Apple's financial, licensing and marketing documents and witnesses with relevant knowledge of those documents. (*Id.* ¶¶ 8-11.) All of the following Apple engineers who have knowledge of iOS, OS X, and the Accused Products are located in Northern California:

- ***Mr. Jon Andrews*** has knowledge regarding the design and development of Apple's iOS and OS X operating systems, and devices capable of running the same, including Apple's iPhone, iPad, iPod touch, MacBook, iMac, Mac Pro, Apple Watch, and Apple TV products;

- ***Dr. Ali Sazegari*** has knowledge regarding the design and development of Apple's Apple's iOS and OS X operating systems, including potentially relevant compression technology;

- ***Mr. Michael Jaynes*** has relevant information regarding sales and finance.

(*Id.* ¶¶ 9-11.) Mr. Andrews, Dr. Sazegari and Mr. Jaynes are located in Cupertino. (*Id.* ¶¶ 2, 9-10.) In addition, both Mr. Andrews and Dr. Sazegari oversee teams of engineers who work on the Accused Functionalities and Accused Products in Cupertino. (*Id.* ¶¶ 9-10.)

In contrast to its strong ties to Northern California, Apple's has no relevant presence in this District. Apple operates only two retail stores in this District, compared to over 260 stores nationwide, including fifty stores in California, and seventeen stores in the Northern District of California. (*Id.* ¶ 12.) Although Apple has a facility in Austin, Texas where ***one*** of the eight

3

Accused Products, the Mac Pro, is manufactured, that facility is not located in this District. And, in any event, Apple is not aware of any employee at that facility having personal knowledge of the design or operation of the Accused Functionalities in the Mac Pro. (*Id.* ¶¶ 13-14.) The relevant research, development, and design of the Mac Pro and the Accused Functionalities utilized in the Mac Pro took place in Cupertino, and the documents and witnesses with relevant technical knowledge of those products reside in and around Cupertino. (*Id.* ¶¶ 9-10.)

### B. Realtime Has No Real Ties to the Eastern District of Texas

Plaintiff Realtime is "a non-practicing entity headquartered in New York." *In re Morgan Stanley*, 417 Fed. Appx. 947, 948 (Fed. Cir. 2011); *see also* Dkt. 1 (Compl.) ¶ 1. As the Court has noted, Realtime's witnesses are located in New York. *Dropbox Transfer Order*, Slip Op. at 4. That is where Realtime purports to have "developed its patented technology, prosecuted its patents, and pursued its research and development business model." (Ex. 2 (Realtime Br.) at 12.) In responding to a motion to transfer in another action, Realtime recently confirmed that its relevant witnesses reside in New York:

- Stephen McErlain, Vice President of Realtime and a named inventor of three of the Asserted Patents, resides in Astoria, New York;

- James Fallon, a named inventor of the Asserted Patents, resides in Armonk, New York; and

- Gerald Padian, a member of Realtime's Board of Directors, resides in Katonah, New York.

(Ex. 3 (Mirzaie Decl.) ¶ 4.)[1]

---

[1] Three of the Asserted Patents list two additional inventors beyond Mr. McErlain and Mr. Fallon, both of whom reside in New York. (Dkt. 1-1, 1-2, 1-3.) The '530 patent lists only Mr.

4

Realtime has admitted that its documents "originate from New York" where it conducted its business activities. (Ex. 2 (Realtime Br.) at 9.) Realtime apparently moved at least some of those documents to its Tyler office space for purposes of litigation. But, that office space was an artifact of litigation, which Realtime leased to advance its litigation and settlement-related licensing activities after it began filing lawsuits in this District. (Ex. 4 (McErlain Decl.) ¶ 4.) Although Realtime asserts its Tyler office space has also been used for unspecified "meetings and communications" between Board members, *id.* ¶ 6, the only Board member Realtime has identified as a relevant witness is Mr. Padian, who resides in New York.

In its response to a recent motion to transfer, Realtime alleges that it "[r]ecently" opened a second office in Plano, Texas "in furtherance of its efforts to develop and license its intellectual property portfolio." (*Id.* ¶ 7.) Realtime states it hired an engineer Ms. Deepika Sreenivasulu Pagala who works out of that office and "assists in the development and licensing of Realtime's intellectual property portfolio." (*Id.*) By its address, the Plano office appears to be nothing more than a virtual or shared "Regus" office space. (*See* Ex. 5).[2] Regardless, Realtime's assertion that it only recently hired a new engineer in Plano to assist with vague "development and licensing" efforts does not explain why she would have knowledge relevant to this case, where the latest Asserted Patent issued in November 2014. (Dkt. No. 1-3 ('062 patent).)

### C. Potential Non-Party Witnesses Reside in the Northern District of California

Apple is not aware of any potential non-party witnesses who reside in the Eastern District

---

Fallon as an inventor. (Dkt. 1-4.)
[2] *Available at* http://www.regus.com/locations/business-centre/texas-plano-plano-shops-at-legacy (last accessed Nov. 7, 2015).

of Texas. In contrast, several potential non-party witnesses reside in the Northern District of California. For example, numerous authors of prior art patents and references likely at issue in this case reside in the San Francisco Bay Area, a well-known technology hub where much of the technological development in computer systems and compression techniques took place.

For example, Dr. Ke-Chiang Chu is an inventor on multiple pieces of prior art, on which Apple is likely to rely to support its invalidity defenses, including U.S. Patent Nos. 5,467,087 and 5,150,430. (Bittner Decl. ¶ 7.) Dr. Chu lives in Saratoga, California (within the Northern District of California) and could not be compelled to attend a trial in Texas. (Bittner Decl. ¶ 7.) Dr. Chu's '430 patent was cited as part of reexamination proceedings against one of the Asserted Patents (the '530 patent) and therefore is likely to be relevant to claim construction, as well as Apple's invalidity defenses. (Bittner Decl. ¶ 7.)

Another example is Dr. Randy Katz, who developed a system called the Bay Area Research Network System while at U.C. Berkeley in the San Francisco Bay Area. This system, which is described in a reference titled "The Bay Area Research, Wireless Overlay Networks" and published in 1996, appears to have used multiple different compression techniques depending on the nature of the data. (Bittner Decl. ¶ 8.) Apple is likely to rely on this prior art system and the corresponding publication to support its invalidity defenses. Dr. Katz continues to work at U.C. Berkeley, resides in San Francisco, California in the Northern District, and could not be compelled to attend a trial in Texas. (Bittner Decl. ¶ 8). In addition, Joy Aloysius Thomas is an inventor named on U.S. Patent No. 5,870,036, resides in the San Francisco Bay Area and could not be compelled to attend a trial in Texas. (Bittner Decl. ¶ 9)

Another example is the IBM 3494/3495 Tape Library Dataserver, which supports the IBM 3490 and 3590 Tape Subsystem and Magstar Tape Drive. Upon information and belief,

these products were made and sold by IBM as early as August 8, 1995, and were designed and developed by IBM's International Technical Support Organization in San Jose, California. (Bittner Decl. ¶ 10.) Apple is likely to rely on this prior art system and corresponding documents or witnesses, some of which are still believed to be located in San Jose, California, to support its invalidity defenses.

### III. ARGUMENT

This case should be transferred to the U.S. District Court for the Northern District of California because litigation there is "clearly more convenient" under the governing legal standards. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

As long as the claim could have been filed in the judicial district to which transfer is sought, transfer is appropriate if "the transferee venue is clearly more convenient" in view of several private and public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315 (quotation omitted). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quotation omitted). Importantly, the plaintiff's choice of venue is not an independent factor in this analysis. *Id.* at 314 n.10; *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009) (finding plaintiff's choice of venue is not entitled to special weight in the analysis under Section 1404).

Here, the factors weigh heavily in favor of transfer. The Northern District of California is home to a clear majority of likely party witnesses and Apple's relevant documents. Realtime's connections to this District were either manufactured in the context of litigation or are not relevant to the issues in this case.

### A. This Action Could Have Been Brought in N.D. Cal.

There is no dispute that this action could have been brought in California. Apple is headquartered within the Northern District of California, (*see, e.g.*, Jaynes Decl. ¶ 4; Dkt. 1, ¶ 12), and is subject to personal jurisdiction there. *See* 28 U.S.C. §§ 1391(c)(2), 1400(b).

### B. The Four Private Interest Factors Strongly Favor Transfer to N.D. Cal.

#### 1. *The Vast Majority of Relevant Documents are in Northern California*

This factor weighs in favor of transfer for the same reasons the Court noted in its *Dropbox* Transfer Order, as the bulk of the relevant evidence resides in California. In patent infringement cases, the location of the defendant's documents is of primary importance because "the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quotation omitted). "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."[3] *Id.*

Here, all or nearly all of Apple's relevant documents are stored in or near Cupertino, where the Apple employees who created those records developed and designed the Accused

---

[3] Access to documents is an important factor in evaluating the relative convenience of two venues, even when the documents are electronically stored. *See Volkswagen II*, 545 F.3d at 316; *Plant Equip. Inc. v. Intrado Inc.*, No. 09-395, 2010 WL 2465358, *3 (E.D. Tex. June 16, 2010) ("Even in the age of electronic discovery, considerations of physical evidence remain meaningful in a § 1404(a) analysis.").

Functionalities and Accused Products. (Jaynes Decl. ¶¶ 8-10.) Apple's technical documents relating to the design and development of the Accused Functionalities, including its sensitive source code, are located in Cupertino. (*Id.*) In addition, Apple's documents relating to the marketing, sales, pricing and finance decisions for the Accused Products that incorporate the Accused Functionalities, are located in Cupertino. (*Id.*) Although *one* of the eight of Accused Products, the Mac Pro, is manufactured in Austin, Texas, the relevant technical and financial documents for that product are located in Cupertino, where it was designed and developed (including documents related to the design and development of the Accused Functionalities utilized in the Mac Pro).[4] (*Id.* ¶¶ 8-11.)

In contrast, Apple is aware of no relevant evidence in this District. Apple has only two retail stores in this District, and those retail stores would not have the internal technical, sales, and marketing documents relevant to this Action. (Jaynes Decl. ¶¶ 13-15.) Moreover, any documents that Realtime maintains in this District are not relevant to the transfer analysis, since Realtime admits they "originate from" research and development that occurred in New York, (Ex. 2 (Realtime Br.) at 9), and Realtime only moved them to this District for purposes of litigation. *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (rejecting reliance on documents transported to Texas for purposes of litigation in the transfer analysis).[5]

As this District has previously recognized, the location of Apple's documents in the

---

[4] In addition, documents related to relevant prior art systems, including the Bay Area Research Network System and the IBM system identified above, are likely to be located in the Northern District of California. *See* Section II.C, *supra*.

[5] *See also In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009) (same); *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) ("[T]he transfer of documents to a company's offices in anticipation of litigation" is entitled to no weight in the venue analysis).

Northern District of California favors transfer there. *See Personalweb Techs., LLC v. Apple, Inc.*, 6:12-CV-660, 2014 WL 1689046, at *11 (E.D. Tex. Feb. 12, 2014). In *Personalweb*, this Court found that even though the plaintiff's documents were purportedly located in Tyler, the location of the evidence weighed against transfer because "[a]s the accused infringer, Apple is likely to possess a larger volume of documents relevant to this litigation." *Id.* The same is true here. Apple as the defendant presumptively holds the "bulk of the relevant evidence," and that evidence is in Northern California. *In re Genentech*, 566 F.3d at 1345.

Because the majority of the evidence is located in or near Northern California, this factor favors transfer. *See id.* at 1345-46 ("Keeping this case in the Eastern District of Texas will impose a significant and unnecessary burden on [defendants] to transport documents that would not be incurred if the case were to proceed in the Northern District of California.").

### 2. *N.D. Cal. Has Subpoena Power Over California Witnesses*

Transfer to a venue with "absolute" subpoena power to compel the attendance of witnesses at both depositions and trial is favored when available. *Volkswagen II*, 545 F.3d at 316. Here, a number of non-party witnesses work and reside in California, outside the reach of this Court's trial subpoena powers. *See* Fed. R. Civ. P. 45(c)(1). For example, Apple is aware of at least three persons who reside in the Northern District of California and possess knowledge regarding potentially-invalidating prior art, and whose testimony may be important to Apple's invalidity defenses. *See* Section II.C, *supra*. In contrast, Apple is not aware of any non-party witnesses with relevant knowledge who reside in the Eastern District of Texas.

Because the Northern District of California has absolute subpoena power over a number of known non-party witnesses with relevant knowledge, this factor favors transfer there. *See Droplets, Inc. v. Amazon.com, Inc.*, No. 2:11-cv-392, 2012 WL 3578605, at *5 (E.D. Tex. June

27, 2012) (finding compulsory process merits transfer when numerous prior art inventors with knowledge and documents relevant to the patents-in-suit reside in the transferee venue compared with few or none in the chosen forum).

### 3. *N.D. Cal. Will Be More Convenient For the Majority of Willing Witnesses Identified to Date*

The Northern District of California is clearly more convenient than this District for Apple's witnesses.  Apple has identified several current engineers and executives who are likely to testify and who reside and work in the Northern District of California, and many of them supervise larger groups of Apple engineers and other employees who also may have relevant information.  (Jaynes Decl. ¶¶ 9-10.)  All those witnesses could attend trial in the Northern District of California without substantial travel time or expense.  The same is true for the potential non-party witnesses who are located in the San Francisco Bay Area.  *See* Section II.C, *supra*.

Travel to the Eastern District of Texas would be considerably more onerous for the California witnesses.  There are no direct flights from the Bay Area to Tyler, Texas.  (Bittner Decl. ¶ 11.)  The shortest indirect flights between the Bay Area and Tyler are around five hours and cover more than 1,500 miles.  (*Id*.)  As the Fifth Circuit has explained, such travel not only "increases the time which these fact witnesses must be away from their regular employment" and from "work or home responsibilities," but also brings with it associated additional "meal and lodging expenses" and increasingly complicated scheduling problems.  *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004); *see also Genentech*, 566 F.3d at 1343.

As the Court noted in *Dropbox*, "the fact that Realtime's witnesses have indicated that proceeding in this District will be more convenient for them is entitled to little weight."

11

*Dropbox* Transfer Order at 8. Realtime's New York-based witnesses would need to travel regardless, and moving the trial to the Northern District of California adds only minimal additional travel time for those witnesses. There are no direct flights from New York to Tyler, but there are numerous direct flights each day from New York to the San Francisco Bay Area. (Bittner Decl. ¶ 12.) In addition, travel to the Bay Area would potentially change the travel times of the New York-based witnesses by ***only thirty minutes***. The shortest flight times between New York and Tyler are around five hours, fifty minutes, whereas the shortest flight times between New York and the Bay Area are around six hours, twenty minutes. (*Id.*) Finally, Realtime's witnesses will incur "meal and lodging expenses" regardless of where trial is held.

Thus, this factor that considers the cost of attendance for willing witnesses also weighs in favor of transfer to the Northern District of California.

4. *Practical Issues Encouraging Expedient Adjudication Is Neutral*

Even though the other private interest factors favor transfer, Realtime may argue that judicial efficiency justifies retaining venue in this District because Realtime chose to bring other lawsuits before this Court involving the Asserted Patents. That argument is unavailing, especially in view of this Court's recent transfer of the *Dropbox* case to the Northern District of California.

This Court has substantive experience with only ***one*** of the four Asserted Patents, and the Northern District of California will also have experience with that one patent in adjudicating the *Dropbox* and *Teradata* cases. Three of the four Asserted Patents—the '608, '936, and '862 patents—have been asserted in only one prior litigation, against Microsoft and other defendants. *See Realtime Data, LLC v. Microsoft Corp.*, Case No. 4:14-cv-827-RC (E.D. Tex. filed Dec. 19, 2014). There were no substantive motions or rulings, and the case concluded in settlement only

12

two months after the defendants answered. *See id.*, Dkt. No. 33 (Apr. 27, 2015 Report of Mediation). The fourth Asserted Patent—the '530 patent—has been asserted in one prior case in this Court, as well as cases that are still pending. Nonetheless, the '530 patent is also asserted in the *Dropbox* and *Teradata* cases that this Court transferred to the Northern District of California. *Dropbox* Transfer Order at 1. Because both districts have or will have experience with the '530 patent, this factor is at best neutral in the transfer analysis. Moreover, none of the other cases before this Court where the '530 patent was asserted have involved the same technology accused of infringement here—Apple's operating systems and products.

The Court's prior experience with an overlapping patent also cannot "override" transfer, where it is otherwise warranted based on factors such as the location of the sources of proof and convenience of the witnesses. *See Chrimar Sys., Inc. v. Ruckus Wireless, Inc.*, Civ. No. 6:15-CV-638-JRG-JDL, Dkt. No. 28, Slip Op. at 14 (E.D. Tex. Dec. 9, 2015). In *Chrimar*, the Court had "previously construed the disputed terms of one of the patents-in-suit in a terminated case, had one case pending with all four asserted patents, six additional cases with two of the asserted patents, and twenty-five co-filed cases with all four of the patents-in-suit asserted." *Id.* at 11. Although finding "some apparent judicial economy benefits" to retaining venue, the Court nevertheless held that transfer was appropriate because its prior experience could not "override" a showing that the Northern District of California was clearly more convenient. *Id.* at 13-14.

The same is true here. The private interest factors overwhelmingly show that the Northern District of California a more convenient forum for this case, and the mere fact that Realtime has chosen to file and litigate other cases involving the same patents in this District cannot override those considerations. *See also Zimmer*, 609 F.3d at 1382 (finding another suit in the forum does not "negate[] the significance of having trial close to where most of the identified

witnesses reside and where the other convenience factors clearly favor" transfer).

Finally, a transfer at this early stage will not waste efforts by this Court or otherwise prejudice Realtime. The Court has not held the initial scheduling conference, no docket control order has issued, and discovery has not yet begun.

### C. The Public Interest Factors Favor Transfer to N.D. Cal.

Although the first, third, and fourth public interest factors are neutral as discussed below, the second public interest factor involving a forum's local interest weighs heavily in favor of transfer to the Northern District of California.

#### 1. *N.D. Cal.'s Interests in the Issues Encompassed by This Case Strongly Favor Transfer*

As this Court recognized in *Dropbox*, the Northern District of California has a greater local interest in this case than this District, because this case "calls into question the work and reputation" of individuals who worked there to design and develop the accused technology. *Dropbox* Transfer Order (quoting *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community.")). Here, Apple developed the Accused Functionalities and Accused Products in Cupertino, and the Apple employees principally responsible for the Accused Functionalities continue to work and reside in that area. (Jaynes Decl. ¶¶ 8-10.) Apple has been headquartered in Cupertino since 1976 and employs about 25,000 people in Cupertino. (*Id.* ¶¶ 4-5.)

As the Court noted in the *Dropbox* Transfer Order, the significant local interest in the Northern District of California far outweighs any local interest in this District that results from

14

Realtime's office space in Tyler, created to house its documents and prototypes for purposes of litigation. *See Dropbox* Transfer Order at 9-10.[6] Nor is the likelihood that people use the Apple products in this District sufficient to create a local interest here. *See Nintendo*, 589 F.3d at 1198 ("If the products were sold throughout the United States, . . . then the citizens of the venue chosen by the plaintiff have no more or less of a meaningful connection to the case than any other venue." (citing *Volkswagen II*, 545 F.3d at 317–18, and *TS Tech*, 551 F.3d at 1321 (quotation omitted))).

Because the accused technology was developed, designed, and marketed by a company headquartered in Cupertino, the Northern District of California has a substantially greater local interest than this District, and this second public interest factor heavily favors transfer.

### 2. *The Remaining Public Interest Factors Are Neutral*

The remaining public interest factors are neutral, as they were in the *Dropbox* case. The speculative nature of the first public interest factor—administrative issues related to congestion—generally does not weigh in favor of or against transfer. *See LT Tech*, 2013 WL 6181983, at *6 (finding this factor neutral when due to similarities of statistics for districts and because "patent cases have special rules and procedures that make general statistics less useful to this analysis"). The third and fourth public interest factors—the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws, respectively—are neutral because this matter arises entirely under patent law. *LT Tech*, 2013

---

[6] *See also* Zimmer, 609 F.3d at 1381 (ordering transfer and discounting plaintiff's presence in Texas because it "appear[ed] to be recent, ephemeral, and an artifact of litigation"); Microsoft, 630 F.3d at 1364 ("[C]ourts [must] to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation.").

15

WL 6181983, at *7-8. As a result, there is no foreseeable conflict of law, and both courts are equally capable of applying the applicable law. *Id.*

## IV. CONCLUSION

For the foregoing reasons, Apple respectfully requests the Court transfer this Action pursuant to Section 1404(a) to the Northern District of California.

Dated: February 9, 2016 Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: */s/ Melissa R. Smith*
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Thomas M. Melsheimer
Texas Bar No. 13922550
melsheimer@fr.com
Thomas B. Walsh, IV
Texas Bar No. 00785173
walsh@fr.com
Michael A. Bittner
Texas Bar No. 24064905
bittner@fr.com
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: 214-747-5070
Facsimile: 214-747-2091

Katherine Kelly Lutton
California Bar No. 194971
lutton@fr.com
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: 650-839-5070
Facsimile: 650-839-5071

Brian P. Boyd
Georgia Bar No. 553190
bboyd@fr.com
1180 Peachtree Street NE
Atlanta, GA 30309
Telephone: 404-892-5005
Facsimile: 404-892-5002

17

John Brinkmann
Texas Bar No. 24068091
brinkmann@fr.com
1221 McKinney Street, Suite 2800
Houston, TX 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

**Counsel for Defendant
APPLE INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 9, 2016, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel has complied with the meet and confer requirements of Local Rule CV-7(h) and that this Motion is opposed. Parties have however agreed to file a Joint Motion to Stay the proceeding pending resolution of Realtime's forthcoming objections to this Court's recent transfer orders in the co-pending consolidated litigation captioned as *Realtime Data, LLC. v. Actian Corp. et al.*, Case No. 6:15-cv-463-RWS-JDL.

*/s/ Melissa R. Smith*